1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

11

| | |
|---|---|
| LISA J. H.,[1] | Case No. CV 19-07462-RAO |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

12
13
14
15
16
17

18  I.   **INTRODUCTION**

19         Plaintiff Lisa J. H. ("Plaintiff") challenges the Commissioner's denial of her

20  application for a period of disability and disability insurance benefits ("DIB").  For

21  the reasons stated below, the decision of the Commissioner is AFFIRMED.

22  II.   **PROCEEDINGS BELOW**

23         On or about March 29, 2013, Plaintiff filed a Title II application for a period

24  of disability and DIB alleging disability beginning January 15, 2013. (Administrative

25  Record ("AR") 135-36.)  Her application was denied initially on August 16, 2013,

26

27  ───────────────

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B)
and the recommendation of the Committee on Court Administration and Case
28  Management of the Judicial Conference of the United States.

and upon reconsideration on January 3, 2014. (AR 87-90, 94-98.) Plaintiff filed a request for a hearing, and a hearing was held on September 14, 2015. (AR 33-53, 100.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 33-53.) On October 9, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act, from March 28, 2013 through December 31, 2014, the date last insured. (AR 25-26.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-4.)

Plaintiff filed her first action in this Court on May 10, 2017. (AR 930-32.) The action resulted in reversal and remand of the ALJ's decision. (AR 939, 940-47.)

On May 14, 2019, a supplemental hearing was held. (AR 877-95.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (*Id.*) On June 28, 2019, the ALJ rendered an unfavorable decision. (AR 867.) The ALJ's decision became the Commissioner's final decision.[2] Plaintiff filed this action on August 28, 2019. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff did not engage in substantial gainful activity since her alleged onset date through her date last insured. (AR 860.) At **step two**, the ALJ found that Plaintiff had the following severe impairments: multilevel cervical and lumbar disc degeneration. (*Id.*) At **step three**, the ALJ found that Plaintiff "did not have an impairment or combination of

---

[2] "[W]hen a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case." 20 C.F.R. § 404.984 (a). Upon review of the record, the Court finds that the Appeals Council did not assume jurisdiction over the case and as such the ALJ's decision is the Commissioner's final decision subject to this Court's review.

impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 861.)

Before proceeding to step four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work . . . except [Plaintiff] is limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. [Plaintiff] cannot work around unprotected heights or operate hazardous machinery. [Plaintiff] is limited to occasional neck rotation, flexion, and extension while at the workstation. [Plaintiff] is limited to predictable, routine changes in the work setting. [Plaintiff] is limited to standing one minute out of every 30 minutes while at the workstation. [Plaintiff] is limited to frequent reaching, handling, and fingering.

(AR 861.)

At **step four**, the ALJ found that Plaintiff was capable of performing past relevant work as an accounting controller and a scheduler. (AR 867.) Accordingly, the ALJ determined that, as to Plaintiff's claim for period of disability and DIB, Plaintiff had not been under a disability from January 15, 2013, through December 31, 2014, the date last insured. (*Id.*)

## III.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means--and means only--'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

1  interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725
2  (9th Cir. 1998) (citation omitted).

3          "[T]he Commissioner's decision cannot be affirmed simply by isolating a
4  specific quantum of supporting evidence.  Rather, a court must consider the record
5  as a whole, weighing both evidence that supports and evidence that detracts from the
6  Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001)
7  (citations and internal quotation marks omitted).  "'Where evidence is susceptible to
8  more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan*
9  *v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v.*
10 *Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the
11 evidence can support either affirming or reversing the ALJ's conclusion, we may not
12 substitute our judgment for that of the ALJ.").  The Court may review only "the
13 reasons provided by the ALJ in the disability determination and may not affirm the
14 ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th
15 Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

16 **IV.    DISCUSSION**

17         Plaintiff raises a single issue for review – whether the ALJ properly considered
18 the treating opinion of Moustapha Abou-Samra, M.D.  (*See* Joint Stipulation ("JS")
19 4.)  Plaintiff contends that "the ALJ once again impermissibly rejected Dr. Abou-
20 Samra's opinion." (JS 9; *see* JS 9-14, 20-22.)  The Commissioner contends that "the
21 ALJ provided several specific reasons for discounting Dr. Abou-Samra's opinions."
22 (JS 16; *see* JS 14-20.)

23         **A.    Dr. Abou-Samra's Opinions**[3]

24         On October 14, 2013, Dr. Abou-Samra saw Plaintiff for a neurosurgical
25 consultation.  (AR 852-53.)  Plaintiff presented with chronic neck pain which was

26 _____

27 [3] Dr. Abou-Samra's opinions are found within a series of letters to referring
   physician, Laura Harman, M.D.  (*See* AR 852.)  The Court previously found that
28 these records were proper medical opinions.  (*See* AR 946.)

4

noted to have started about twenty years ago. (AR 852.) Plaintiff's condition "has fluctuated and always recovered with physical therapy." (*Id.*) Beginning in March, Plaintiff "started having rather significant pain, which did not respond to physical therapy." (*Id.*) Plaintiff's pain was "localizing to both shoulders, right more than left, with some tingling in the upper extremities. The tingling is in the medial aspect of the hand on the left side only." (*Id.*)

Dr. Abou-Samra reviewed an MRI and observed "evidence of straightening of the lordotic curve and degenerative abnormalities at the C4-5, C5-6, and C6-7 levels. The 4-5 and 6-7 abnormalities are mild; 5-6 seems to be moderately severe with right-sided localization." (AR 852.) He engaged in a review of Plaintiff's symptoms and past history. (*Id.*) Dr. Abou-Samra found Plaintiff's thoracic and brain MRI scans were entirely normal. (AR 853.) Plaintiff's lumbar MRI scan showed very mild abnormality at the L4-5 level. (*Id.*) Dr. Abou-Samra found Plaintiff's review of systems and past history was "otherwise not remarkable." (*Id.*)

Dr. Abou-Samra conducted a physical examination of Plaintiff. (AR 853.) He observed Plaintiff was normocephalic, with equal and reactive pupils. (*Id.*) Plaintiff had normal strength and normal funduscopic examination. (*Id.*) He noted Plaintiff's neck movements were "limited in extension where she reports dizziness. Rotation seems to be free and flexion seems to be okay." (*Id.*) Plaintiff was noted to be "slightly hyperactive throughout[,] but there is no clonus, Hoffman, or upgoing toes." (*Id.*) Her sensory examination was normal, and she did not have a sensory level. (*Id.*)

Dr. Abou-Samra explained that Plaintiff "should complete her vasculitis workup as well as therapy and [she] actually wants to wait until July before deciding on surgery." (AR 853.) Dr. Abou-Samra noted that Plaintiff had "exhausted conservative therapy, that is physical therapy over a multitude of time, as well as prednisone." (*Id.*) He explained that he "did not see any point of giving her epidural injections." (*Id.*) Dr. Abou-Samra found that "[s]ince [Plaintiff] does not have any

motor weakness, she can choose to live with the symptoms but if she gets to a point where she cannot live with the symptoms surgery will be indicated." (*Id.*) However, he opined that he would "be inclined to restrict surgery to the C5-6 level where [he] think[s] the bulk of the symptoms [are]." (*Id.*) Dr. Abou-Samra also ordered additional x-rays. (*Id.*)

On January 13, 2014, Dr. Abou-Samra saw Plaintiff for a neurosurgical follow-up. (AR 850-51.) Plaintiff's neck symptoms were documented as being the same, but her left sided trapezius and shoulder pain were noted to be "getting worse." (AR 850.) Dr. Abou-Samra reviewed Plaintiff's cervical x-rays and opined that "the C5-6 level is significantly degenerated and there is compromise of the neural foramen. There are some abnormalities at 4-5 and 6-7 and there is slight motion at C4-5 level." (*Id.*) He noted that Plaintiff's ocular vasculitis had worsened and resulted in "increasing her prednisone" and prescribing methotrexate. (*Id.*) Dr. Abou-Samra opined that, because Plaintiff did not have any motor dysfunction, "treating her cervical spine at this junction is not the most optimal thing we can do given the fact that she is on steroids and methotrexate." (*Id.*) He explained that surgery could be considered if she had a motor deficit, but that Plaintiff would be managed symptomatically. (*Id.*) He noted that Plaintiff's conditions "makes doing definitive surgical therapy for her cervical spine difficult." (AR 850-51.) Dr. Abou-Samra opined that "it is unlikely that this patient can work at her usual job sitting at a desk and dealing with computers." (*Id.*) Accordingly, he opined that Plaintiff "is totally disabled for the time being." (AR 851.)

On March 20, 2014, Dr. Abou-Samra saw Plaintiff in a neurosurgical follow-up. (AR 848.) Dr. Abou-Samra observed that Plaintiff's vasculitis is "still quite symptomatic" and had not improved. (*Id.*) He explained that Plaintiff was on prednisone, but she could not tolerate methotrexate and was being referred to a trial to use Humira. (*Id.*) He noted that Plaintiff was "quite distraught" about the cost of the trial. (*Id.*) Plaintiff presented for the follow-up because she was experiencing

clumsiness but did not exhibit weakness in the upper extremities. (*Id.*)  Plaintiff was "having intense tingling in the upper extremities and it is of concern to her." (*Id.*)

Dr. Abou-Samra examined Plaintiff and did not detect any weakness in her upper extremities or upper motor neuron findings, but found subtle hyperreflexia. (AR 848.)  He explained that there was no clonus, no upgoing toes, and no Hoffman. (*Id.*)  He "indicated that it is necessary to pursue the vasculitis treatment and to stop smoking." (*Id.*)  Plaintiff was instructed to contact Dr. Abou-Samra if her condition deteriorated "in which case [he] will repeat her cervical MRI scan." (*Id.*)

On April 20, 2015, Dr. Abou-Samra saw Plaintiff again for a neurosurgical follow-up. (AR 844.)  Dr. Abou-Samra noted that Plaintiff had undergone a cervical MRI scan, which documented unchanged abnormalities, including "significant at C5-6, moderately severe at 4-5, and less significant at C6-7 level." (*Id.*)  He noted that Plaintiff had not stopped smoking. (*Id.*)  Plaintiff reported that she was thinking of having surgery once she returns from visiting family out-of-state and would follow up with Dr. Abou-Samra. (*Id.*)  Dr. Abou-Samra explained that smoke cessation was essential, and that Plaintiff was "being withdrawn from steroids." (*Id.*)  Dr. Abou-Samra explained that once Plaintiff "decided on the time of surgery, a bone density study should be obtained." (*Id.*)

Dr. Abou-Samra saw Plaintiff for another follow-up on March 19, 2015. (AR 846.)  He explained that Plaintiff "continues to have symptoms of neck pain, bilateral shoulder and arm pain, which is quite intense on occasion." (*Id.*)  He noted that Plaintiff was "eager to consider surgical treatment on her cervical spine; however, she [was] not ready" because she was still on her steroid therapy and still smokes. (*Id.*)  Dr. Abou-Samra noted that Plaintiff was exploring options to stop smoking. (*Id.*)  Additionally, he explained that since more than two years had passed since there were "any anatomical studies of her cervical spine," it would be appropriate to obtain new cervical x-rays and cervical MRI scan, and the results would dictate the speed with which to "move after the stoppage of steroids and smoking." (*Id.*)

**B.     Applicable Legal Standards**

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3), 404.1546(c); *see Robbins*, 466 F.3d at 883 (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations.  *See* 20 C.F.R. § 404.1513(a), 404.1545(a)(3).  An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

Courts give varying degrees of deference to medical opinions based on the provider: (1) treating physicians who examine and treat; (2) examining physicians who examine, but do not treat; and (3) non-examining physicians who do not examine or treat.  *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). Most often, the opinion of a treating physician is given greater weight than the opinion of a non-treating physician, and the opinion of an examining physician is given greater weight than the opinion of a non-examining physician.  *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The ALJ must provide "clear and convincing" reasons to reject the ultimate conclusions of a treating or examining physician.  *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Lester*, 81 F.3d at 830-31.  When a treating or examining physician's opinion is contradicted by another opinion, the ALJ may reject it only by providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn*, 495 F.3d at 633; *Lester*, 81 F.3d at 830; *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008).  "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts

8

1  and conflicting evidence, stating his interpretation thereof, and making findings.'"

2  *Garrison*, 759 F.3d at 1012 (citation omitted).

3  **C.    Discussion**

4      After summarizing Dr. Abou-Samra's treatment records, the ALJ gave Dr.

5  Abou-Samra's assessment that Plaintiff "was temporarily disabled pending cervical

6  surgery . . . less probative weight for several reasons." (AR 865.) The ALJ reasoned

7  as follows:

8      First, Dr. Abou-Samra is the only medical source that assessed
   functional limitations other than the state agency medical consultants.

9     His conclusion that [Plaintiff] was temporarily disabled pending spinal
   surgery was inconsistent with the weight of the medical evidence. The

10    other medical sources did not assess any functional limitations or advise
   surgery. [Plaintiff] was treated conservatively for her alleged spinal

11    pain and the records indicate, including an admission by the claimant,
   that her spinal pain was substantially reduced by these conservative

12    measures. Further, the examining eye physicians all stated that her
   ocular vasculitis was controlled and she had 20/20 or 20/25 vision

13    bilaterally. Finally, the treatment records from Dr. Abou-Samra and
   the other medical sources did not reveal significant physical findings

14    upon examination or diagnostic testing. The finding of moderate
   cervical disc disease at several levels and mild lumbar disc disease at

15    one level did not warrant a finding of total temporary disability.

16

17  (*Id.*)

18

19      Plaintiff contends that the ALJ erred in assessing Dr. Abou-Samra's

20  opinions.[4]  (*See* JS 9-14, 20-22.)   The Commissioner contends that the ALJ

21

22  _____

23  [4] Plaintiff also argues that the ALJ failed to discuss Dr. Abou-Samra's opinion that it
   was unlikely Plaintiff would be able to work at her usual job sitting at a desk and

24  dealing with computers. (JS 13; *see* JS 21-22.) Plaintiff contends that the ALJ failed
   "to adhere to the directive of this Court" by not "specifically consider[ing] Dr. Abou-

25  Samra's opinion." (JS 21, citing AR 946.) However, the Court did not mandate or
   direct the ALJ to specifically consider this statement, but rather offered this statement

26  as evidence that Dr. Abou-Samra had provided proper medical opinions. (*See* AR

27  946.) The Court did not direct the ALJ to consider this opinion beyond what the ALJ
   has done here. (*See id.*) In summarizing Dr. Abou-Samra's treatment and opinions,

28

9

discounted Dr. Abou-Samra's opinions because: the opinions were inconsistent with the medical evidence, including Dr. Abou-Samra's own treatment records; the opinions were "inconsistent with evidence from other providers who also treated Plaintiff for cervical pain"; "none of the many other physicians who treated Plaintiff offered any opinion assessing her functional limitations, and none of them advised cervical surgery"; Plaintiff received only conservative treatment; and "the objective medical evidence, specifically imaging reports showing moderate cervical disc disease and mild lumbar disc disease 'did not warrant a finding of total temporary disability' as Dr. Abou-Samra opined." (AR 16-20.)

The Court's review of the ALJ's decision finds that in giving little weight to Dr. Abou-Samra's opinion, the ALJ relied on three reasons. Specifically, Dr. Abou-Samra's opinion was (1) inconsistent with the weight of the medical evidence; (2) inconsistent with Plaintiff's conservative treatment; and (3) treatment records did not reveal significant physical findings upon examination or diagnostic testing.

### 1. *Reason No. 1: Inconsistent with the Weight of the Medical Evidence*

An ALJ may reasonably rely on inconsistencies with the medical record to discount a treating physician's opinion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Corral v. Saul*, 797 F. App'x 380 (9th Cir. 2020) (holding an ALJ may give "less weight to the opinions . . . that are otherwise inconsistent with credited medical evidence").

Here, the ALJ reasoned that Dr. Abou-Samra's assessment that Plaintiff was temporarily disabled pending spinal surgery was entitled to little probative weight

———————————

the ALJ noted that Dr. Abou-Samra found Plaintiff "could not return to her past sedentary work and she was totally disabled 'for the time being' until she underwent cervical surgery." (AR 865, citing AR 850-51.) Dr. Abou-Samra relied on Plaintiff's inability to return to her sedentary work in opining that she was "totally disabled for the time being." (AR 850-51.) The ALJ then went on to give little probative weight to Dr. Abou-Samra's opinions of Plaintiff's total disability. (AR 865.)

because the assessment was inconsistent with the weight of the medical evidence. (AR 865.)  Specifically, the ALJ relied on the fact that Dr. Abou-Samra was "the only medical source that assessed functional limitations other than the state agency medical consultants" and "other medical sources did not assess any functional limitations or advise surgery." (*Id.*)  Notably, the only opinions discussed by the ALJ are those of the state agency medical consultants. (*See* AR 865-66.)  The ALJ gave the opinions of the state agency medical consultants partial probative weight, but did not explain why the opinions were entitled to more weight than Dr. Abou-Samra's opinions. (*See* AR 866.)  An opinion that contradicts the opinion of a treating physician cannot alone constitute a specific, legitimate reason for discounting the opinion of a treating physician. *See Tonapetyan*, 242 F.3d at 1149; *see also Heather V. v. Comm'r of Soc. Sec.*, No. 2:18-CV-00163-MKD, 2019 WL 1643647, at *6 (E.D. Wash. Apr. 16, 2019) ("[C]ase law requires not only an opinion from the consulting physician but also substantial evidence (more than a mere scintilla but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

Although an ALJ need not recite "magic words" to reject a treating physician's opinion, he must–in addition to merely summarizing the facts–interpret the evidence and make findings. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). Merely stating that Dr. Abou-Samra's opinion was inconsistent with the weight of the evidence, without relating that evidence to specific rejected opinions and findings, is inadequate. *See Embrey*, 849 F.2d at 421; *see also Garrison*, 759 F.3d at 1012-13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion."); *Carmona v. Berryhill*, No. EDCV 16-01376-AJW, 2017 WL 3614425, at *4 (C.D. Cal. Aug. 22, 2017) ("Saying

that a medical opinion is 'inconsistent with the substantial evidence' is not a specific reason for rejecting the opinion; it is nothing more than boilerplate.").

Accordingly, this was not a specific, legitimate reason supported by substantial evidence for discounting Dr. Abou-Samra's opinions.

### 2. *Reason No. 2: Inconsistent with Plaintiff's Conservative Treatment*

An ALJ may reject the opinion of a treating physician who prescribed conservative treatment, yet opines that a claimant suffers disabling conditions. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The ALJ reasoned that Plaintiff "was treated conservatively for her alleged spinal pain and the records indicate, including an admission by the claimant, that her spinal pain was substantially reduced by these conservative measures." (AR 865.)

Plaintiff contends that the ALJ erred because although Plaintiff wanted "surgical intervention and Dr. Abou-Samra wanted to proceed with surgery but for the steroid use and the fact that [Plaintiff] was still in the process of smoking cessation." (JS 11, citing AR 567.) Additionally, Plaintiff contends that the ALJ erred by failing to point to or indicate which additional treatments were more appropriate. (*Id.*) Courts have held that an ALJ's reliance on a claimant's conservative treatment history is misplaced when there is no indication that more aggressive treatment options are available. *See Juan C. P. v. Saul*, No. ED CV 19-427-PLA, 2019 WL 6039944, at *9 (C.D. Cal. Nov. 14, 2019) (finding ALJ erred where "the ALJ points to no evidence in the record that any treatment other than the treatment [claimant] was receiving or had been recommended to receive . . . is a standard method for treating individuals with [claimant's] impairments and the type of pain caused by [claimant's] physical impairments."); *see also Lapeirre-Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010) ("[T]he record does not reflect that more aggressive treatment options are appropriate or available. A claimant cannot be [faulted] for failing to pursue non-conservative treatment options where none

12

exist."); *Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1210 (D. Or. 2019) ("Because the ALJ did not specify what 'more aggressive treatment options [were] appropriate or available,' it would be illogical to discredit Plaintiff 'for failing to pursue non-conservative treatment options where none exist.'") (citation omitted).

Here, the ALJ observed that Dr. Abou-Samra opined on multiple occasions that Plaintiff required surgery, but that such surgery was not advisable because Plaintiff was undergoing steroid therapy for ocular vasculitis and continued smoking. (*See* AR 865.)  Further, the ALJ noted that Plaintiff's ocular vasculitis was controlled, and she had 20/20 or 20/25 vision bilaterally.  (*Id.*)  Because Plaintiff's treatment for her ocular vasculitis was one of the reasons Dr. Abou-Samra proposed withholding surgery, the fact that Plaintiff's condition was controlled suggests that Dr. Abou-Samra could have insisted on surgery if it was necessary.  (*See id.*)  While the ALJ did not explicitly state that a more aggressive treatment was available, i.e. surgery, the ALJ's discussion makes it clear that he discounted Dr. Abou-Samra's opinion because Dr. Abou-Samra did not pursue the more aggressive treatment that was available.  *See Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

Accordingly, this was a specific, legitimate reason supported by substantial evidence for discounting Dr. Abou-Samra's opinions.

> 3.   *Reason No. 3: Treatment Records Did Not Reveal Significant Physical Findings Upon Examination or Diagnostic Testing*

An ALJ can reasonably discount a treating physician's opinion that is inadequately supported by clinical findings.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).  Here, the ALJ reasoned that "treatment records from Dr. Abou-Samra and the other medical sources did not reveal significant physical findings upon examination or diagnostic testing."  (AR 865.)  In support the ALJ observed that "[t]he finding of moderate cervical disc disease at several levels

13

and mild lumbar disc disease at one level did not warrant a finding of total temporary disability." (*Id.*)

Plaintiff contends that "[t]his is just another way of saying Dr. Abou-Samra's opinion is inconsistent with the weight of the medical evidence. The ALJ's continuation of this claim without demonstrating how or why is nothing more than a factually challenged legally flawed conclusion." (JS 12.) However, "[a]n ALJ properly may discount a treating physician's opinions that are in conflict with treatment records *or* are unsupported by objective clinical findings." *Bokhari v. Berryhill*, No. CV 17-1668-E, 2017 WL 3600379, at *3 (C.D. Cal. Aug. 18, 2017) (emphasis added) (citing *Bayliss*, 427 F.3d at 1216; *Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004)).

Additionally, Plaintiff contends that "[t]he ALJ does not demonstrate how the presence of moderate to severe bilateral neural foraminal narrowing at C5-C6, that a neurosurgeon believes merits surgery, is inconsistent with the evidence when the only opinion contrary to that conclusion is her own lay opinion." (JS 10 (internal citations omitted).) However, where, as here, the evidence might be susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *See Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The ALJ was allowed to rely on normal medical examinations and mild diagnostic findings in discounting the opinions of Dr. Abou-Samra. *See Kelle A.B. v. Berryhill*, No. ED CV 16-1693-SP, 2018 WL 6832089, at *4 (C.D. Cal. Dec. 28, 2018) (finding ALJ did not err in discounting treating physician's opinion, in part, where ALJ relied on normal examination results and mild findings); *Yang v. Saul*, No. 1:18-CV-00759-BAM, 2019 WL 4392417, at *6 (E.D. Cal. Sept. 13, 2019) (finding ALJ properly discounted treating physician's opinion where "he noted 'substantially normal examination

findings' and [claimant's] diagnostic imaging had essentially mild findings.").

Accordingly, this was a specific, legitimate reason supported by substantial evidence for discounting Dr. Abou-Samra's opinions.

**D.  Conclusion**

In sum, the ALJ did not err in assessing the opinion of Plaintiff's treating physician.  Because the ALJ has provided specific and legitimate reasons for discounting Dr. Abou-Samra's opinions, "[a]ny error in relying on additional reasons to reject [a physician's] opinion was harmless."  *See Barney v. Berryhill*, 769 F. App'x 465, 466 (9th Cir. 2019).

**V.  CONCLUSION**

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: June 30, 2020

_____
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**

15